UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUENTIN D. BETTY,

        Plaintiff,

v.

DANIEL HEYNS, *et al.*,

        Defendants.

_____/

Case No. 1:15-cv-445

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on motions for summary judgment filed by defendants Daryl Becher and Chad Chaney (docket no. 20) and defendant William Schmuggerow, M.D. (docket no. 24).

    **I.**    **Background**

This lawsuit arose from injuries which plaintiff allegedly sustained while being transported by the MDOC. The remaining defendants are MDOC Transportation Officer Daryl Becher, Michigan Reformatory (RMI) Hearing Investigator Chad Chaney, and Dr. William Schmuggerow. The Court previously summarized plaintiff's claims as follows:

> On October 10, 2013, Plaintiff was being transported to RMI on a bus driven by Defendant Becher. Plaintiff alleges that Defendant Becher drove recklessly and at an excessive rate of speed which caused the front tires of the bus to veer off the road, causing the passengers, including Plaintiff, to be thrown into the air. In the process of getting the front tires back on the road, Defendant Becher allegedly caused the bus to swerve into oncoming traffic. By this time, another passenger landed on Plaintiff, causing him to suffer injury to his neck and back.

After arriving at RMI injured and in pain, Plaintiff explained that he had just been in an accident and needed to go the hospital. The person with whom Plaintiff spoke indicated that no accident had been reported by Defendant Becher. Plaintiff was placed in segregation for an unrelated incident. Plaintiff remained in segregation for 6.5 hours without any medical assistance despite experiencing excruciating pain. Plaintiff was finally taken to healthcare and was seen by Unknown Party identified as RMI Nurse. Despite his severe pain and the circumstances of the bus incident, Plaintiff was only given ibuprofen and told to use a warm compress on the injured areas.

Plaintiff was not seen by healthcare for ten days during which he continued to experience terrible pain. On October 20, 2013, he was seen by Unknown Party identified as RMI Doctor. Plaintiff asked for an independent medical examination, an x-ray and stronger medication. His requests were denied. Plaintiff was taken to healthcare on October 26, 2013, at which time he was seen but not treated, and again five days later, at which time he was given additional ibuprofen, and blood tests and x-rays were ordered.

In October or November, 2013, Plaintiff wrote a complaint to Defendants Heyns, Palmer, Smith and other MDOC officials complaining about the October 10, 2013, incident with the transport van, his injuries and the lack of adequate medical care.

At some point while he was in segregation, Defendant Chaney visited Plaintiff and told him that if he would refrain from "making an issue' out of the transport van incident, Defendant Chaney would talk with Unknown Party identified as RMI Doctor about Plaintiff's pain and suffering. (Compl., docket #1, Page ID# 5.) When Plaintiff refused Chaney's offer, he allegedly told Plaintiff, "You file anything, remember, on paper a lot of inmates seriously hurt or kill themselves in the hole." (*Id.*) Because Plaintiff believed Defendant Chaney's alleged threat, he refrained from pursuing his grievance against Defendant Becher. When Plaintiff got out of segregation he wrote a complaint to Defendants Smith and Palmer regarding Defendant Chaney's threat, but did not receive a response.

On October 19, 2014, Plaintiff made another request for an independent medical examination regarding his on-going headaches, neck pain, lower back spasms, memory loss, loss of sleep, and difficulty doing daily tasks like eating, reading and writing. The following day, Plaintiff filed a grievance against Defendant Becher for reckless driving and a grievance against RMI Healthcare for failing to properly treat his injuries. Plaintiff's grievances were denied. On October 27, 2014, Plaintiff was seen by Unknown Party identified as RMI Practitioner, who examined Plaintiff and instructed him to do neck and back exercises to stretch his muscles. Plaintiff was examined by Defendant Schmuggerow on November 6, 2014, who

>prescribed new pain medication and ordered x-rays. Later, Defendant Schmuggerow told Plaintiff that the x-rays showed "complications" in his lower back. (*Id.* at Page ID#15.) Plaintiff told Defendant Schmuggerow he needed stronger medication. Defendant Schmuggerow prescribed acetaminophen, ibuprofen and aspirin. Plaintiff alleges that he continues to suffer from his initial injuries as well as loss of strength in his left arm, light sensitivity and headaches.

Opinion (docket no. 7, PageID.63-65). The complaint arguably raised an Eighth Amendment claim against Transportation Officer Becher for failure to protect, an Eighth Amendment claim against Dr. Schmuggerow for deliberate indifference to his serious medical needs, and a First Amendment retaliation claim against RMI Investigator Chaney. *Id.* at PageID.65.

## II.     Defendants' motion for summary judgment

### A.     Legal standard

Defendants have moved for summary judgment because plaintiff failed to exhaust any grievances with respect to his claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

>(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

4

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

The record reflects that plaintiff has filed several grievances through Step III. *See* Nurenberg Certification and MDOC Step III Grievance Report (docket no. 21-2, PageID.139-143). Out of these grievances, defendants identified four grievances which appear related to the incident.

Grievance RMI 14-10-2257-28e ("2257") was directed against defendant Becher with respect to the October 10, 2013 incident, claiming that Becher "was driving fast and reckless," and grieved Becher "for his negligence." *See* Grievance 2257 (docket no. 21-2, PageID.164). This grievance, filed more than one year after the incident, was rejected and subsequently denied as untimely. *Id.* at PageID.164-168.

Grievance RMI 14-10-2244-28e ("2244-28e") was directed at a nurse for treatment on the date of the incident, a nurse who examined him on October 31, 2013, and a doctor who saw plaintiff on or about November 6, 2013. *See* Grievance 2244 (docket no. 21-2, PageID.169). This grievance, filed on October 23, 2014, was rejected as untimely. *Id.* at PageID.161, 163, 169. Defendant Dr. Schmuggerow points out that this grievance, which was the only one complaining of inadequate health care, did not name him and was rejected as untimely. The doctor also pointed out that none of the grievances name him or refer to medical care that he provided to plaintiff in November 2014, the date alleged in the complaint.

Grievance RMI 15-08-1765-28e ("1765") was directed at RMI Investigator Chaney. *See* Grievance 1765 (docket no. 21-2, PageID.153). This grievance, which listed an incident date of October 10, 2013, was dated July 24, 2015 and rejected as untimely. *Id.* at PageID.150-154).[1]

---

[1] Defendants also refer to Grievance RMI 14-10-2244-28d (2244-28d") which was directed at defendant Becher for alleged negligence and denied as untimely. Defendants' Brief (docket no. 21, PageID.127). The only evidence submitted by defendants with respect to this grievance is the MDOC

In his response, plaintiff identified the three relevant grievances as 2244-28e, 2257 and 1765. Plaintiff's Response (docket no. 30, PageID.237-240). As discussed, all of these grievances were filed more than one year after the incident and rejected as untimely. Plaintiff contends that this Court should excuse exhaustion because (1) administrative remedies were not reasonably available; (2) although the MDOC initially rejected Grievances 2244-28e and 2257 as untimely, it later addressed the merits of the claims; (3) Chaney prevented plaintiff from timely filing Grievance 1765; (4) Grievance 2244-28e was an "ongoing" grievance; and (5) the fact that Dr. Schmuggerow was not named in Grievance 2244-28e or did not treat plaintiff until November 6, 2014 is irrelevant. *Id.* at PageID.246-249. The Court will address plaintiff's claims as they relate to the three grievances at issue.

    **a.**    **Grievance 1765**

As discussed, Grievance 1765 was rejected at Step I as untimely. *See* Grievance 1765 at PageID.150-154. Plaintiff contends that the exhaustion requirement should be waived because administrative remedies were not reasonably available while he was in administrative segregation and Chaney prevented him from filing a timely grievance. In support of his claim regarding administrative segregation, plaintiff has presented an "affidavit" from Everett Pounds stating, among other things, that he worked in the RMI library, that he provided legal materials to prisoners housed in administrative segregation, and that plaintiff asked him "for legal assistance to help him file a complaint concerning a transportation accident he was involved in during his transfer

---

Prisoner Step III Grievance Report which indicates that it was received at Step I on October 10, 2013 and denied at Step III on January 7, 2015. *See* Step III Grievance Report (docket no. 21-2, Page.ID.143). However, exhaustion of this grievance is irrelevant because plaintiff does not rely on it. *See* discussion, *infra*.

from another prison," and that plaintiff "expressed his inability to read or write for himself, due to his injuries." Pound Aff. (docket no. 30-1, PageID.262-263). Pound's statement has no evidentiary value because it is neither an affidavit nor a declaration under 28 U.S.C. § 1746.[2] Furthermore, the statement contains no dates and makes no reference to plaintiff's alleged inability to file a grievance while in administrative segregation.

With respect to Chaney, plaintiff contends that he did not file a timely grievance against him because Chaney "threatened and intimidated" plaintiff. Plaintiff's Response at PageID.247-248. Plaintiff also stated that he did not file a grievance until after his "July 23, 2015 transfer from RMI to LCF, or to a prison of safety." *Id.* As discussed, plaintiff's complaint alleged that Chaney, the acting grievance coordinator, visited him in segregation and threatened to take action against plaintiff if he filed a grievance. For example, Chaney stated that "[d]on't make an issue of the accident and I will see what I can get the doctor to do for your pain," and "[y]ou file anything [against Becher], remember, on paper a lot of inmates seriously hurt or kill themselves in the hole." Compl. (docket no. 1, PageID.14). Plaintiff further stated that Chaney's threats were

---

[2] 28 U.S.C. § 1746 provides that in any matter which "is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury." 28 U.S.C. § 1746(2). Such statements must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, Pounds diluted the statutory requirement, stating that "the forgoing is true and correct to the best of my knowledge and belief." Pounds Aff. at PageID.263. *See Totman v. Louisville Jefferson County Metro Government*, 391 Fed.Appx. 454, 464 (6th Cir. 2010) (to constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated;" thus, a complaint which included a verification stating facts that are true and correct to the best of the affiant's "knowledge and belief" indicated that the allegations of the complaint went beyond the plaintiff's personal knowledge, that the allegations extended to matters within the plaintiff's "beliefs," and that the plaintiff's "beliefs" did not meet the evidentiary standard under set forth in Fed. Rules Civ. Proc. 56).

"made clear" to him, and because Chaney was acting coordinator, and due to plaintiff's "helpless state and fear of further retaliation, plaintiff postponed redress of grievances." *Id.* Plaintiff made these statements in a verified complaint, which has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment.[3] *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Based on this record, a question of fact exists with respect to whether Chaney interfered with plaintiff's ability to file a timely grievance for retaliation. Accordingly, defendants' motion for summary judgment should be denied with respect to this retaliation claim.

        **b.**        **Grievance 2244-28e**

As discussed, Grievance 2244-28e was rejected at Step I as untimely. *See* Grievance 2244-28e at PageID.161, 163, 169. At the Step II appeal, the MDOC reiterated that the grievance was untimely. *Id.* at PageID.163. However, the MDOC reviewer also addressed the merits of the claim, stating "In addition, your medical concerns have been reviewed and addressed with you on a consistent basis. No evidence is found which supports your claims of staff impropriety." *Id.* The merits were also considered when it was denied at Step III, with the decision stating, "[u]pon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered." *Id.* at PageID.161. Where the MDOC overlooked plaintiff's procedural shortcomings and reviewed the merits of the grievance, the Sixth Circuit has held that the court

---

[3] Unlike Pounds' statement, plaintiff's complaint included a verification which complied with the requirements of 28 U.S.C. § 1746, by stating "I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to the matters alleged on information and belief and as to those, I believe them to be true. Pursuant to Title 28 of the United States Code, section 1746, I declare under penalty of perjury that the forgoing is true and correct. Executed on 4/15/15." Complaint at PageID.20.

should consider the grievance properly exhausted for purposes of the PLRA.[4] "When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).[5] Under the Sixth Circuit's decision in *Reed-Bey*, this Court is effectively bound by the MDOC's waiver of the prisoner's procedural default irregularities and the state agency's decision to address the merits of the grievance as though it had been properly exhausted. Accordingly, the court should consider this grievance as properly exhausted through Step III with respect to the timeliness issue.

However, Dr. Schmuggerow has raised separate defenses that the grievance is not properly exhausted because plaintiff did not name him in the grievance or address the doctor's treatment of plaintiff on November 6, 2014. Grievance 2244-28e is directed at a number of unnamed medical providers complaining about medical treatment provided in October and November 2013. In his complaint, plaintiff alleged that his interaction with Dr. Schmuggerow occurred on November 6, 2014. This alleged constitutional violation occurred about two weeks *after* plaintiff filed his

---

[4] In contrast, the Court notes that the Step III decision in Grievance 1765 states "**THE REJECTION IS UPHELD**." *See* Grievance 1765 at PageID.150 (emphasis in original).

[5] The Sixth Circuit provided the following rationale:

> In that setting, the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar? The rules serve the *State's* interests: its interest in creating a prison grievance system, its interest in reviewing a complaint before another sovereign gets involved and its interest in deciding when to waive or enforce its own rules. And the State's decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim.

*Reed-Bey*, 603 F.3d at 325 (emphasis in original).

grievance. Plaintiff could not complain about his treatment at the hands of Dr. Schmuggerow in Grievance 2244-28e, because he did not even see the doctor until two weeks after he filed the grievance. Plaintiff did not properly exhaust this claim against Dr. Schmuggerow.

Finally, plaintiff contends that Grievance 2244-28e, which complained about treatment by unnamed medical personnel in October and November 2013, operates as to Dr. Schmuggerow's actions on November 6, 2014, because it is an "ongoing" grievance for a medical claim. Plaintiff cites *Ellis v. Vadlamudi*, 568 F.Supp.2d 778 (E.D.Mich. 2008), in which the court held that a grievance claiming that medical personnel were deliberately indifferent to an ongoing medical condition was timely as long as prison officials retained the power to treat the condition. However, this is not recognized as a general rule in this circuit. *See Siggers v. Campbell*, 652 F.3d 681 (6th Cir.2011) (limiting the holding in *Ellis* to the facts of that case and requiring separate grievances for alleged violations). Furthermore, plaintiff's claim against Dr. Schmuggerow is a discrete event which occurred in November 2014; plaintiff does not allege any cause of action based upon Grievance 2244-28e complaining of his alleged lack of treatment in October and November 2013. Plaintiff's allegation against Dr. Schmuggerow is not properly exhausted. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Reed-Bey*, 603 F.3d at 325; *Sullivan*, 316 Fed. Appx. at 470. Accordingly, Dr. Schmuggerow is entitled to summary judgment on this claim.

        **c.**        **Grievance 2257**

As discussed, Grievance 2257 was rejected at Step I as untimely. *See* Grievance 2257 at PageID.164-165. At the Step II appeal, the MDOC reiterated that the grievance was procedurally improper, i.e., it was both untimely and duplicative. *Id.* at PageID.168. However, the reviewer also addressed the merits of the claim, stating "In addition, your medical concerns have been reviewed

11

and addressed with you on a consistent basis. No evidence is found which supports your claims of staff impropriety." *Id.* The MDOC also considered the merits when it denied the Step III appeal, stating "[u]pon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered." *Id.* at PageID.166. As discussed, the Court should accept the MDOC's waiver of the prisoner's procedural default irregularities and consider this claim as properly exhausted through Step III. *See Reed-Bey*, 603 F.3d at 325.

Nevertheless, this grievance did not raise an Eighth Amendment claim against defendant Becher. Rather, plaintiff complained that Becher was negligent in driving a bus and that the prisoners in the bus were "thrown around and ejected from our seats." Grievance 2257 at PageID.164. This grievance did not claim that Becher's actions violated plaintiff's federal constitutional rights. For this reason, plaintiff has no properly exhausted his Eighth Amendment claim alleged against Becher. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Reed-Bey*, 603 F.3d at 325; *Sullivan*, 316 Fed. Appx. at 470. Accordingly, Becher is entitled to summary judgment.

        **d.**    **Plaintiff's request for discovery**

Under Fed. R. Civ. P. 56(b), "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Plaintiff contends that he is entitled to discovery before the Court grants defendants' motions for summary judgment under Fed. R. Civ. P. 56(d), which provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

order." Fed. R. Civ. P. 56(d). The trial court's allowance of additional discovery under Fed. R. Civ. P. 56(d) (formerly Rule 56(f)) is discretionary. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 416 (6th Cir. 2009). Here, plaintiff filed an "affidavit/declaration" requesting additional discovery. *See* Plaintiff's Affidavit/Declaration (docket no. 30-1). However, this document is neither an affidavit (it is not a sworn notarized statement)[6] nor a declaration (it does not contain a verification in the form required by 28 U.S.C. § 1746). Furthermore, plaintiff has not identified any discovery which would change the Court's resolution of defendants' motion for summary judgment. Further discovery would not change the Court's result: (1) that the grievance directed against Becher did not claim a violation of a federal constitutional right; (2) that plaintiff did not direct a grievance at Dr. Schmuggerow related to the doctor's November 6, 2014 treatment as alleged in the complaint; and (3) that factual issues exist with respect to plaintiff's grievance against Chaney. Accordingly, there is no basis to grant plaintiff relief under Fed. R. Civ. P. 56(d).

### IV.   Plaintiff's supplement

In an order entered this date, the Court granted plaintiff's motion to supplement his response. The supplement consists of a copy of a medical record which is an "addendum" to plaintiff's November 6, 2013 visit, which reflects that Dr. Schmuggerow reviewed an x-ray on November 27, 2013. *See* Addendum (docket no. 36-1, PageID.293). Plaintiff contends that this document shows that Dr. Schmuggerow treated him on November 6, 2013 and November 27, 2013. Contrary to plaintiff's claim, the record does not indicate that the doctor provided any treatment on November 6, 2013. Furthermore, plaintiff does not allege any federal constitutional claim arising

---

[6] *See People to Use of Esper v. Burns*, 161 Mich. 169, 173, 125 N.W. 740 (1910) ("[a]n affidavit has been defined to be a declaration on oath, in writing, sworn to by a party before and attested by some person who has authority to administer oaths").

from Dr. Schmuggerow's review of the x-ray on that date. Accordingly, the proposed additional briefing does not change the Court's conclusion that plaintiff failed to properly exhaust his Eighth Amendment claim against Dr. Schmuggerow.

### V. Recommendation

For these reasons, I respectfully recommend that defendant Becher and Chaney's motion for summary judgment (docket no. 20) be **GRANTED** as to defendant Becher and **DENIED** as to defendant Chaney.

I further recommend that defendant Dr. Schmuggerow's motion for summary judgment (docket no. 24) be **GRANTED**.

I further recommend that defendants Becher and Dr. Schmuggerow be **DISMISSED** from this action.


Dated: August 1, 2016　　　　　　　　/s/ Ray Kent
　　　　　　　　　　　　　　　　　　RAY KENT
　　　　　　　　　　　　　　　　　　United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).